UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHERYL C.,[1]

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[2]

    Defendant.

No. 18 C 1443

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Cheryl C. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

### I. PROCEDURAL HISTORY

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Nancy A. Berryhill has been substituted for her predecessor, Carolyn W. Colvin, as the proper defendant in this action. Fed. R. Civ. P. 25(d).

On January 3, 2014, Plaintiff applied for DIB, alleging that she became disabled on November 13, 2012 because of knee, back, hip, and stomach issues; arthritis and joint pain; headaches; dizziness; depression; and high blood pressure. (R. at 73, 75, 97, 227). Her application was denied initially on May 28, 2014 and upon reconsideration on January 16, 2015. (*Id.* at 73–74, 97–100, 105–08). After requesting a hearing, Plaintiff, represented by counsel, testified before an Administrative Law Judge (ALJ) on June 21, 2016. (*Id.* at 31–33, 37–60, 109–10). The ALJ also heard testimony from a vocational expert (VE). (*Id.* at 61–69).

On September 12, 2016, the ALJ issued an unfavorable decision. (R. at 15–30). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had engaged in substantial gainful activity (SGA) during the second quarter of 2015. (*Id.* at 20). The ALJ, however, also found that there were continuous 12-month periods during which Plaintiff had not engaged in SGA. (*Id.*). At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar and cervical spine, obesity, bilateral knee and hip impairments, and a left shoulder impairment. (*Id.* at 21). At step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 22).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[3] and determined that Plaintiff has the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] requires a sit/stand option whereby she can alternate to standing for 5 minutes after every 30 minutes of sitting; can stand for 2 to 6 hours out of an 8 hour work day with the option to alternate to sitting for 10 minutes after every 30 minutes of standing or walking; occasionally reach overhead with left upper extremity; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, crouch and crawl; occasionally be exposed to unprotected heights, moving mechanical parts and operation of a commercial motor vehicle and can use a cane up to 100 percent of the time for ambulation, but the cane is not needed for balance while standing.

(R. at 22–23). Moving to step four, the ALJ determined that Plaintiff could perform her past relevant work as an administrative assistant (DOT code 169.167-010) and billing clerk (DOT code 214.362-042). (*Id.* at 26). Accordingly, the ALJ concluded that Plaintiff had not been under a disability since her alleged disability onset date through the date of the ALJ's decision. (*Id.* at 18, 26).

On July 20, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 6–10). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which "is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. § 404.1520(a)(4).

3

it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the

4

Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff challenges the ALJ's decision on a number of grounds. After reviewing the record and the parties' briefs, the Court finds that remand is necessary because the ALJ failed to account for Plaintiff's mild mental limitations when assessing her RFC and questioning the VE.[4]

"The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young*, 362 F.3d at 1000. "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano*, 556 F.3d at 563. The ALJ's "failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). "If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." *Indoranto*, 374 F.3d at 474.

At step 2, the ALJ found that Plaintiff's depression was non-severe but nonetheless caused mild limitations in activities in daily living, social functioning, and concentration, persistence, or pace. (R. at 21–22). The ALJ, though, did not include any corresponding mental restrictions in Plaintiff's RFC to accommodate her

---

[4] Because the Court remands on this basis, it does not address Plaintiff's other arguments at this time.

5

mild mental limitations. (R. at 22–23). Nor did the ALJ explain how Plaintiff's depression or the resulting mild limitations were addressed by Plaintiff's RFC. (*Id.* at 22–26).

This was error. Even if Plaintiff's depression was non-severe, the ALJ still had to assess it "in conjunction with [Plaintiff's] RFC." *See Pepper v. Colvin*, 712 F.3d 351, 366 (7th Cir. 2013). And if the ALJ believed that the mild mental limitations "did not merit a non-exertional limitation in the RFC, he was obligated to explain that conclusion so that [the Court] can follow the basis of his reasoning." *Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011). The ALJ did not do so here. True, as the Commissioner points out, the ALJ gave great weight to the portions of the state agency consultants' opinions that found that Plaintiff's mental impairments were non-severe. (R. at 25; Def.'s Mem., Dkt. 17 at 7). But the ALJ did not provide an evaluation and explanation of how, if at all, the mild limitations affected Plaintiff's RFC.

The ALJ's oversight is especially critical here because the ALJ's determination of non-disability was based Plaintiff's ability to perform her past work as an administrative assistant—a skilled position—and a billing clerk, a semi-skilled position that, with an SVP of 4, is at the top of the semi-skilled range. (R. at 26, 62); *Hovi v. Colvin*, No. 12-C-169, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013). And the inclusion of even mild limitations in social functioning or concentration, persistence, or pace may preclude the ability to perform such skilled and semi-skilled work. *See Simon-Leveque*, 229 F. Supp. 3d at 787–88 (explaining that a mild

6

limitation in concentration, persistence, or pace could impact one's ability to work as a brokerage clerk, which is a skilled position); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011) (faulting the ALJ for not considering whether the claimant's mild limitations in activities of daily living, social functioning, and concentration, persistence or pace could affect her ability to perform past skilled work); *President v. Berryhill*, No. 17 C 4910, 2018 WL 4282053, at *3 (N.D. Ill. Sept. 7, 2018) (finding that mild limitations in social functioning or in concentration, persistence, or pace could affect one's ability to work as an information clerk, which is a semi-skilled position); *Hovi*, 2013 WL 3989232, at *16 (explaining that mild limitations in concentration, persistence, and pace may preclude semi-skilled or skilled work).

For example, the Dictionary of Occupational Titles (DOT) defines Plaintiff's past administrative assistant position as follows:

> Aids executive in staff capacity by coordinating office services, such as personnel, budget preparation and control, housekeeping, records control, and special management studies. Studies management methods in order to improve workflow, simplify reporting procedures, or implement cost reductions. Analyzes unit operating practices, such as recordkeeping systems, forms control, office layout, suggestion systems, personnel and budgetary requirements, and performance standards to create new systems or revise established procedures. Analyzes jobs to delimit position responsibilities for use in wage and salary adjustments, promotions, and evaluation of workflow. Studies methods of improving work measurements or performance standards. Coordinates collection and preparation of operating reports, such as time-and-attendance records, terminations, new hires, transfers, budget expenditures, and statistical records of performance data. Prepares reports including conclusions and recommendations for solution of administrative problems. Issues and interprets operating policies. Reviews and answers correspondence.

DOT 169.167-010, 1991 WL 647424. The position also requires an individual to "[a]pply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions[,] [i]nterpret an extensive variety of technical instructions in mathematical or diagrammatic form[, and] [d]eal with several abstract and concrete variables." *Id.* And Plaintiff's past position as a billing clerk is defined as follows:

> Operates calculator and typewriter to compile and prepare customer charges, such as labor and material costs: Reads computer printout to ascertain monthly costs, schedule of work completed, and type of work performed for customer, such as plumbing, sheet metal, and insulation. Computes costs and percentage of work completed, using calculator. Compiles data for billing personnel. Types invoices indicating total items for project and cost amounts.

DOT 214.362-042, 1991 WL 671876. It requires an individual to "[a]pply principles of rational systems," such as bookkeeping, internal combustion engines, electric wiring systems, house building, farm management, and navigation, "to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists," as well as to "[i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." *Id.*

The job responsibilities of an administrative assistant and a billing clerk, as described in the DOT, are of sufficient complexity that even mild limitations in daily activities, social functioning, or concentration, persistence, or pace could impact an individual's ability to perform these skilled and semi-skilled positions. *See Simon-Leveque*, 229 F. Supp. 3d at 788; *Alesia*, 789 F. Supp. 2d at 933–34; *President*, 2018 WL 4282053, at *3. But the VE was not asked any questions reflecting these

8

limitations. (R. at 61–69). And because the ALJ did not account for these limitations in questioning the VE, it is unclear whether Plaintiff is indeed capable of working as an administrative assistant or a billing clerk. Therefore, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion" that Plaintiff can perform his past work, which prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595 (internal quotations omitted).

Thus, the case must be remanded. *See, e.g.*, *Alesia*, 789 F. Supp. 2d at 933–34 (the ALJ's failure to account for the claimant's mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace necessitated remand); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (same); *see also Hovi*, 2013 WL 3989232, at *16 (explaining that "[c]ourts in this circuit have consistently held that an ALJ's unexplained failure to include even mild limitations in concentration, persistence, and pace in the RFC warrants remand"). On remand, the ALJ shall explicitly evaluate whether the mild mental limitations stemming from Plaintiff's depression warrant corresponding mental or non-exertional restrictions. If so, the ALJ shall include those restrictions in his RFC assessment and the hypothetical questions posed to the VE; if not, the ALJ shall explain his conclusion so that a reviewing court can follow the basis of his reasoning.

The ALJ should also take the opportunity on remand to reevaluate Plaintiff's subjective symptom allegations in accordance with SSR 16-3p and 20 C.F.R. § 404.1529. The ALJ should sufficiently articulate how he evaluated the full range of

evidence—including Plaintiff's daily activities, medications and accompanying side effects (if any), and work history—and then explain the logical bridge from the evidence to his conclusions. The ALJ should then include in his RFC assessment any additional restrictions that he deems credible. *See Strysik v. Colvin*, No. 13 CV 7723, 2015 WL 8481953, at *7 (N.D. Ill. Dec. 10, 2015).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [13] is **GRANTED**, and the Commissioner's motion for summary judgment [16] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: January 28, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

10